## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KIRK WASHINGTON**                              **CIVIL ACTION**

**VERSUS**                                       **NO: 13-260**

**CAROLINA CASUALTY**                            **SECTION: "I" (4)**
**INSURANCE COMPANY, ET AL.**

## <u>ORDER</u>

Before the Court is Defendants, Carolina Casualty Insurance Company, et al.'s, ("Defendants") *Ex Parte* **Motion for Expedited Hearing with Incorporated Memorandum (R. Doc. 7)**, seeking expedited consideration of their **Motion for Status Conference, Alternatively, Motion for Injunctive Relief (R. Doc. 5)**.   The underlying motion is currently noticed for submission on March 20, 2013.  Having found that the motion to expedite has merit, the Court ordered the parties to appear by telephone on Wednesday, March 6, 2013, at 10:30 a.m. to argue the underlying motion.

In brief, this is a personal injury case arising in connection with a motor vehicle accident which occurred in April 2012.  (R. Doc. 1-3, p. 1).[1]  The facts of the case are immaterial beyond noting that Plaintiff, Kirk Washington, ("Washington") has put his medical condition at issue.  The

---

[1]The case was originally filed in Louisiana State Court on Hanaury 10, 2013, and was duly removed to federal court on February 11, 2013.

instant motion concerns a request by Defendants to subject Washington to an Independent Medical Examination ("IME").

## I.   <u>Standard of Review</u>

Federal Rule of Civil Procedure ("Rule") 35 provides in pertinent part that a court may order a party "to submit to a physical or mental examination by a suitably licensed or certified examiner" when the mental or physical condition of that party is in controversy.  Rule 35(a)(1).  The court may issue such an order "on motion for good cause and upon notice to all parties and the person to be examined" which specifies "the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it."  *Id.* at 35(a)(2).  To demonstrate entitlement to conduct the IME, a party must satisfy two criteria.  First, the physical or mental state of the party must be in controversy.  Second, the moving party must show good cause as to why the motion should be granted.  *Schlagenhauf v. Holder*, 379 U.S. 104, 106 (1964).  "Good cause" requires a showing of specific facts that demonstrate the need for the information sought and lack of means for obtaining it elsewhere.  *Id.* at 118.  A "plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury."  *Id*. at 119.

## II.   <u>Analysis</u>

In support of their motion, Defendants argue that on February 26, 2013, Washington advised Defendants that he anticipated having "diagnostic testing and surgery" for a cervical condition with Dr. Kenneth Vogel, ("Dr. Vogel") on March 12 and 13, 2013 in Kenner, Louisiana.  (R. Docs. 5, p. 2; 5-12, p. 2).  Dr. Vogel has no other available dates until April 2013.  (R. Doc. 5-12, p. 2).  Although Defendants have attempted to postpone the surgery in order to take an IME prior to the

surgery, they have been unsuccessful in arranging a date prior to March 12, 2013. (R. Doc. 5, p. 2).

Defendants also argue that the case is less than two months old, and Defendants had not had time to conduct discovery regarding Washington's injury; indeed, to date they have not received adequate medical records from the Plaintiff, even though complete records would have to be made available in order to complete the IME. *Id.* at 3-4. Defendants argue that if Washington is allowed to undergo surgery, his "pre-surgical condition" will be altered, which will adversely affect Defendants' ability to defend the case. (R. Doc. 5-2, p. 7). Defendants have indicated that one physician, "Dr. Ioppolo," is available to conduct the proposed IME in Baton Rouge, Louisiana on March 12, 2013. *Id.* Defendants also indicated that another doctor, "Dr. Culicchia," is available to conduct the IME on March 13, 2013, at his clinic.[2]

At oral argument,[3] Washington contended that he had duly sent notice to Defendants regarding the proposed date of the examination and surgery, and also stated that Dr. Vogel would be unable to conduct the surgery prior to April 2013 due to scheduling conflicts. Washington also stated that although the procedure would be predicated upon diagnostic testing, he had signed an agreement with Dr. Vogel that his appearance for purposes of diagnosis also constituted consent to submit to the surgery if medically necessary upon Dr. Vogel's opinion. Washington conceded that he originally sustained his injuries in April 2012, and had by the date of the instant motion returned to work.[4] However, Washington argued that it would be unjust to submit to a degree of discomfort

---

[2]Defendants did not specify the location of Culicchia's clinic, nor the first names of either doctor.

[3]Due to the expedited nature of the motion, Washington did not file a written brief prior to oral argument.

[4]The specifics of Washington's employment were not described by the parties.

3

while waiting for a new date for surgery.

The Court notes that the parties do not contest that Washington has placed his medical condition at issue.  Moreover, the Court finds that Defendants' ability to ascertain Washington's condition will be compromised if Washington is subjected to the proposed cervical surgery. Defendants' filing, which includes multiple emails to Washington's counsel regarding both the re-scheduling of Washington's proposed surgery and its attempts to arrange for an IME prior to the surgery, indicate that Defendants diligently attempted to resolve the issue prior to filing the instant motion.

During the hearing the Court reviewed the MRI which purportedly supported the need for the cervical surgery; it provided evidence of dessication and bulge, but no herniation.  The Court noted that the parties agreed that the surgery was not necessary to prevent life-threatening medical complications, as evidenced by both the time lapse between the date of injury and the date at which Washington sought surgery, as well as the fact that Washington has since returned to work.  In these circumstances, postponing the proposed surgery until after Defendants have the opportunity to conduct an IME would not prejudice the Plaintiff.

Further, the defendants were able to arrange for Washington's IME on either March 12, 2013 with Dr Ioppolo in Baton Rogue, Louisiana, or with Dr. Culicchia on March 13, 2013.  Therefore, the previously scheduled diagnostic test and prospective cervical surgery with Dr. Vogel was postponed until after Defendants had the opportunity to conduct the IME on either March 12 or 13, 2013.

III.    **Conclusion**

Accordingly,

**IT IS ORDERED** that Defendants, Carolina Casualty Insurance Company, et al.'s, ("Defendants") *Ex Parte* **Motion for Expedited Hearing with Incorporated Memorandum (R. Doc. 7)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' **Motion for Status Conference, Alternatively, Motion for Injunctive Relief (R. Doc. 5)** is **GRANTED**. Plaintiff, Kirk Washington, ("Washington") is not to undergo the previously scheduled cervical diagnosis or surgery with Dr. Kenneth Vogel, ("Vogel") until Defendants have the opportunity to conduct an independent medical examination on either March 12, 2013 or March 13, 2013.

New Orleans, Louisiana, this 8th day of March 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**